Exhibit A

09/26/98  15:41 FAX                                                    ☒001

AFTER RECORDING MAIL TO:
BAGGARLY & ASSOCIATES, P.C.
1640 POWERS FERRY RD.
BLD. 2, STE. 300
MARIETTA, GA. 30067

LOAN ID# 1038427

GEORGIA HARALSON COUNTY

I hereby certify that this instrument
was filed for record in my office
on 27TH day of OCTOBER 19 98
at 9:00 A.  M and Recorded in
DEED Book 406 Page 230–238

Mary Ann Weatherby
CHIEF DEPUTY Clerk. Superior Court

-------[SPACE ABOVE THIS LINE FOR RECORDING DATA]-------

PARCEL #:                                            LOAN ID# 1038427

Prepared By: Tracey White
HOMEAMERICAN CREDIT, INC. D/B/A UPLAND MORTGAGE
BALA POINTE OFFICE CENTRE, 111 PRESIDENTIAL BOULEVARD, SUITE 142
BALA CYNWYD, PA 19004

# SECURITY DEED

THIS SECURITY DEED ("Security Instrument") is given on September 28, 1998. The Grantor is CHERYL DAVIS ("Borrower"). This Security Instrument is given to HOMEAMERICAN CREDIT, INC. D/B/A UPLAND MORTGAGE which is organized and existing under the laws of THE COMMONWEALTH OF PENNSYLVANIA and whose address is BALA POINTE OFFICE CENTRE, 111 PRESIDENTIAL BOULEVARD, SUITE 142 BALA CYNWYD, PA 19004 ("Lender"). Borrower owes Lender the principal sum of Fifty Nine Thousand Five Hundred Dollars ( U.S. $59,500.00) .    This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments of interest only, with the full debt, if not paid earlier, due and payable on October 2, 2013.    (THE "MATURITY DATE"). BORROWER MUST REPAY THE ENTIRE UNPAID PRINCIPAL BALANCE OF THE LOAN AND INTEREST THEN DURE. THIS IS CALLED A "BALLOON PAYMENT." THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of this Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in HARALSON County, GEORGIA:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which has the address of:        271 WESTBROOK ROAD                    City of
                                                                       BREMAN
                                         [Street]                      [City]
Georgia                                   30110              ("Property Address");
                                         [Zip code]

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

FORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

GEORGIA INTANGIBLE TAX PAID
AMOUNT $ 178.50
DATE 10-27-98
Barbara Parsley
TAX COMMISSIONER
HARALSON COUNTY
CONTINUE ON NEXT PAGE

PKT_GA_1_B.DOC
GA_MORT_1_B.DOC                Page 1 of 8  BOOK 406  PAGE 230

SEE PAGE 236  IN THIS DEED BOOK FOR GEORGIA CLOSING ATTORNEY'S AFFIDAVIT.
SEE PAGE 237  IN THIS DEED BOOK FOR WAIVER OF BORROWER'S RIGHTS
SEE PAGE 238  IN THIS DEED BOOK FOR EXHIBIT A (LEGAL DESCRIPTION)

09/28/98  16:41 FAX                                                                    002

LOAN ID# 1038427

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or Property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items". Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a Lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case, Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion. Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies

PKT_GA_1_B.DOC
GA_MORT_1_B.DOC

**CONTINUE ON NEXT PAGE**

LOAN ID# 1038427

and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or (regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

LOAN ID# 1038427

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or

BOOK 406 PAGE 233

PKT_GA_1_B.DOC
GA_MORT_1_B.DOC

CONTINUE ON NEXT PAGE

09/28/98   15:45 FAX                                                                                    @005

LOAN ID# 1038427

formaldehyde, and radioactive materials.  As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety, or environmental protection.

   NON-UNIFORM COVENANTS.  Borrower and Lender further covenant and agree as follows:

   21.  Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise).  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured;  and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.  If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law.  Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.
   If Lender invokes the power of sale, Lender shall give a copy of a notice of sale to Borrower in the manner provided in paragraph 14 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law.  Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines.  Lender or its designee may purchase the Property at any sale.
   Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance.  The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein.  Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.  The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.
   If the Property is sold pursuant to this paragraph 21, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale.  If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

   22.  Release.  Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower.  Borrower shall pay any recordation costs.

   23.  Waiver of Homestead.  Borrower waives all rights of homestead exemption in the Property.

   24.  Assumption not a Novation.  Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation..

   25.  Security Deed.  This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

   26.  Riders to this Security Instrument.  If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.  [Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ V A Rider | ☐ Other(s) [specify]  WAIVER OF BORROWER'S RIGHTS AND ATTORNEY'S AFFIDAVIT | |

CD

BOOK **406** PAGE 234

CONTINUE ON NEXT PAGE

09/28/98  15:45 FAX                                                    ☒006

LOAN ID# 1038427

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it. IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered in the presence of:

_____                    _____ (Seal)
Unofficial Witness                            CHERYL DAVIS              Borrower

                                              _____ (Seal)
                                                                        Borrower
_____
Unofficial Witness                            _____ (Seal)
                                                                        Borrower

                                              _____ (Seal)
                                                                        Borrower

                                              _____ (Seal)
                                                                        Borrower

                                              _____ (Seal)
                                                                        Borrower

_____         _____
Notary Public,                    County

PKT_GA_1_B.DOC                                    BOOK 406 PAGE 235
GA_MORT_1_B.DOC                    Page 6 of 6
                                                        CONTINUE ON NEXT PAGE

09/28/98   15:46 FAX                                                                    ☑007

LOAN ID# 1038427

# GEORGIA CLOSING ATTORNEY'S AFFIDAVIT

GRANTOR:   CHERYL DAVIS

LENDER: HOMEAMERICAN CREDIT, INC. D/B/A UPLAND MORTGAGE

DATE OF SECURITY DEED: September 28, 1998

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

1.   In closing the above loan, but prior to the execution of the Security Deed and the "Waiver of Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Security Deed and the Waiver of Borrower's Rights.

2.   After the review and explanation described in item 1 above, the Borrower(s), executed the Secirty Deed and Waiver of Borrower's

3.   Based on my review and explanation described in item 1 above, it is my opinion that the Borrower(s) knowingly, intentionally and willingly executed the Security deed and Waiver of Borrower's Rights

_____
Closing Attorney

Sworn to and subscribed before me on _____

_____
Notary Public

My Commission expires on _____

[SEAL]

                                                                  CONTINUE ON NEXT PAGE

PKT_GA_1_B.DOC
GA_CLOS_ATTY_AFFID.DOC                    Page 1 of 1        BOOK 406 PAGE 236

LOAN ID: 1038427

GEORGIA

GRANTOR: CHERYL DAVIS

LENDER: HOMEAMERICAN CREDIT, INC. D/B/A UPLAND MORTGAGE

DATE OF SECURITY DEED: September 28, 1998

# WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; THIS MEANS THAT MY FAILURE TO MEET EVERY CONDITION OF THE MORTGAGE LOAN MAY RESULT IN THE LOSS OF MY PROPERTY THROUGH FORECLOSURE; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW, TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH OF THIS DEED, AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

_____ (Seal)
CHERYL DAVIS

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

Signed, sealed and delivered in
the presence of the undersigned
the day of

_____
Witness

_____
Notary Public

My Commission expires on _____

Seal

BOOK 406 PAGE 237          CONTINUE ON NEXT PAGE

EXHIBIT   "A"

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 192 of the 7th District of Haralson County, Georgia and fronting on the West side of McClain Road and being a tract of 0.68 acres as the same is shown and designated on that certain plat entitled Survey for Property of Keith & Tracie Coffman, prepared by Crawford-Williams Assoc., Inc., Surveying Company, certified by Douglas C. Crawford #1833, Georgia Registered Land Surveyor, dated October 4, 1988, revised November 16, 1988, as shown in Plat Book 15, Page 96, Haralson County Records, which plat is incorporated herein by this reference and made a part of this description; said property being known as 271 Westbrook Road, Bremen, Georgia 30110, according to the present system of numbering in Haralson County, Georgia.

BOOK 406 PAGE 238

Exhibit B

LOAN ID# 1038427

# BALLOON NOTE
## (Fixed Rate)

Borrower(s): **CHERYL DAVIS**

**THIS LOAN IS PAYABLE IN FULL ON THE MATURITY DATE. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

September 28, 1998          MARIETTA,               GA
[Date]                      [City]                  [State]

271 WESTBROOK ROAD, BREMEN, City of BREMAN, GA  30110
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $59,500.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is HOMEAMERICAN CREDIT, INC. D/B/A UPLAND MORTGAGE.  I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 11.190%.

After any default described in Section 6(B) of this Note, I will pay interest at a yearly rate of 11.190% or such higher amount as may be permitted by applicable law. This default interest rate will continue after the Note Holder obtains legal judgment against me.

## 3.  PAYMENTS

### (A) Time and Place of Payments

During the term of this loan, on the 2nd day of each month beginning November 2, 1998, I will make monthly payments of accrued interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on the maturity date of October 2, 2013, I still owe accrued interest and other charges under this Note, I will pay those amounts in full on that date as well as the entire unpaid principal balance of the loan.

I will make my monthly payments at BALA POINTE OFFICE CENTRE, 111 PRESENDITIAL BOULEVARD, SUITE 248 BALA CYNWYD, PA  19004 , or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 575.20.

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make a payment of principal at any time before it is due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

If I make a full prepayment or a partial prepayment during the first 36 months of the term of the Note, I agree to pay a prepayment charge as follows: in the 1st month through the 12th month of the term of the Note, the prepayment charge will be 5.000% of the amount prepaid; in the 13th month through the 24th month of the term of the Note, the prepayment charge will be 4.000% of the amount prepaid; in the 25th month through the 36th month of the term of the Note, the prepayment charge will be 3.000% of the amount prepaid. At any time after the 36th month of the term of the Note, I may make a full prepayment or a partial prepayment without charge.

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

*C m D*

PKT_GA_1_0.DOC
GA NOTE 1 0 DOC

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 10.0% of my overdue payment or such higher amount as the Note Holder may choose to impose in accordance with applicable law. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 15 days after the date on which the notice is delivered or mailed to me.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.  OTHER CHARGES**

A.  NSF Charge

If I make a payment under this Note by check, negotiable instrument or other means and the payment is returned to the Note Holder unpaid, I agree to pay the Note Holder a charge for not sufficient funds (NSF charge) in the maximum amount permitted by applicable law.

B.  Administrative Charges

Except as limited by applicable law, I agree to pay the Note Holder any administrative charge that the Note Holder may impose in connection with (1) my failure to comply with the terms and conditions of the Note and (2) the release or satisfaction of any mortgage, financing statement or other security instrument appearing on the public record which relates to my obligations under this Note.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

LOAN ID# 1038427

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Rhonda Budiman_
_____
Witness

_Cheryl Davis_
_____   (Seal)
CHERYL DAVIS                                Borrower

_____
Witness

_____   (Seal)
                                            Borrower

_____   (Seal)
                                            Borrower

_____   (Seal)
                                            Borrower

_____   (Seal)
                                            Borrower

_____   (Seal)
                                            Borrower

Exhibit C

DOC# 001943
FILED IN OFFICE
05/28/2009  08:30 AM
BK:983  PG:318-324
BECKY SMITH ROBINSON
CLERK OF SUPERIOR COU
RT
HARALSON COUNTY

Return to: Richard B. Maner, P.C.
5775 Glenridge Drive, Suite D-100
Atlanta, GA  30328

## RECORDING COVER PAGE

This Recording Cover Page is attached to and made a part of the following instrument for the purpose of satisfying requirements for : (1) The name and mailing address of the person to whom the instrument is to be returned; and (2) The filing and recording notation margin.

BOOK 983 PAGE 319

State of Georgia, Laurens County
CLERK'S OFFICE, SUPERIOR COURT

Filed _____ May 18 ____, 20 09
Recorded ____ May 18 ____, 20 09
At ___ 10:45 ___ O'clock ___ M
in Book ___ 2101 ___ Page ___ 242

Jackie H. Dalton
Clerk of Superior Court

When recorded return to:

Richard B. Maner, P.C.
5775 Glenridge Drive
Building D, Suite 100
Atlanta, GA 30328

## LIMITED POWER OF ATTORNEY

POA 1806

KNOW ALL MEN BY THESE PRESENTS, that Deutsche Bank National Trust Company, a national banking association organized and existing under the laws of the United States, formerly known as Bankers Trust Company of California, N.A. and having its principal place of business at 1761 East St. Andrew Place, Santa Ana, California, 92705, as Trustee (the "Trustee") for many securitizations (the "Agreements" see Exhibit A attached for a listing), hereby constitutes and appoints the Servicer, Ocwen Loan Servicing LLC by and through the Servicer's officers, the Trustee's true and lawful Attorney-in-Fact, in the Trustee's name, place and stead and for the Trustee's benefit, in connection with all mortgage loans serviced by the Servicer pursuant to the Agreements solely for the purpose of performing such acts and executing such documents in the name of the Trustee necessary and appropriate to effectuate the following enumerated transactions in respect of any of the mortgages or deeds of trust (the "Mortgages" and the "Deeds of Trust" respectively) and promissory notes secured thereby (the "Mortgage Notes") for which the undersigned is acting as Trustee for various certificate holders (whether the undersigned is named therein as mortgagee or beneficiary or has become mortgagee by virtue of endorsement of the Mortgage Note secured by any such Mortgage or Deed of Trust) and for which Ocwen Loan Servicing LLC is acting as the Servicer.

This Appointment shall apply only to the following enumerated transactions and nothing herein or in the Agreement shall be construed to the contrary:

The modification or re-recording of a Mortgage or Deed of Trust, where said modification or re-recording is solely for the purpose of correcting the Mortgage or Deed of Trust to conform same to the original intent of the parties thereto or to correct title errors discovered after such title insurance was issued; provided that (i) said modification or re-recording, in either instance, does not adversely affect the lien of the Mortgage or Deed of Trust as insured and (ii) otherwise conforms to the provisions of the Agreement.

1.  The subordination of the lien of a Mortgage or Deed of Trust to an easement in favor of a public utility company or a government agency or unit with powers of eminent domain; this section shall include, without limitation, the execution of partial satisfactions/releases, partial reconveyances or the execution or requests to trustees to accomplish same.

2.  The conveyance of the properties to the mortgage insurer, or the closing of the title to the property to be acquired as real estate owned, or conveyance of title to real estate owned.

3.  The completion of loan assumption agreements.

4.  The full satisfaction/release of a Mortgage or Deed of Trust or full conveyance upon payment and discharge of all sums secured thereby, including, without limitation, cancellation of the related Mortgage Note.

5.  The assignment of any Mortgage or Deed of Trust and the related Mortgage Note, in connection with the repurchase of the mortgage loan secured and evidenced thereby.

243

983 PAGE 320

6. The full assignment of a Mortgage or Deed of Trust upon payment and discharge of all sums secured thereby in conjunction with the refinancing thereof, including, without limitation, the assignment of the related Mortgage Note.

7. With respect to a Mortgage or Deed of Trust, the foreclosure, the taking of a deed in lieu of foreclosure, or the completion of judicial or non-judicial foreclosure or termination, cancellation or rescission of any such foreclosure, including, without limitation, any and all of the following acts:

    a. the substitution of trustee(s) serving under a Deed of Trust, in accordance with state law and the Deed of Trust;

    b. the preparation and issuance of statements of breach or non-performance;

    c. the preparation and filing of notices of default and/or notices of sale;

    d. the cancellation/rescission of notices of default and/or notices of sale;

    e. the taking of deed in lieu of foreclosure; and

    f. the preparation and execution of such other documents and performance of such other actions as may be necessary under the terms of the Mortgage, Deed of Trust or state law to expeditiously complete said transactions in paragraphs 8.a. through 8.e. above.

8. With respect to the sale of property acquired through a foreclosure or deed-in lieu of foreclosure, including, without limitation, the execution of the following documentation:

    a. listing agreements;

    b. purchase and sale agreements;

    c. grant/warranty/quit claim deeds or any other deed causing the transfer of title of the property to a party contracted to purchase same;

    d. escrow instructions; and

    e. any and all documents necessary to effect the transfer of property.

9. The modification or amendment of escrow agreements established for repairs to the mortgaged property or reserves for replacement of personal property.

The undersigned gives said Attorney-in-Fact full power and authority to execute such instruments and to do and perform all and every act and thing necessary and proper to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully as the undersigned might or could do, and hereby does ratify and confirm to all that said Attorney-in-Fact shall be effective as of March _12_, 2008.

This appointment is to be construed and interpreted as a limited power of attorney. The enumeration of specific items, rights, acts or powers herein is not intended to, nor does it give rise to, and it is not to be construed as a general power of attorney.

244

BOOK 983 PAGE 321

Nothing contained herein shall (i) limit in any manner any indemnification provided by the Servicer to the Trustee under the Agreement, or (ii) be construed to grant the Servicer the power to initiate or defend any suit, litigation or proceeding in the name of Deutsche Bank National Trust Company except as specifically provided for herein. If the Servicer receives any notice of suit, litigation or proceeding in the name of Deutsche Bank National Trust Company or Bankers Trust Company of California, N.A., then the Servicer shall promptly forward a copy of same to the Trustee.

This limited power of attorney is not intended to extend the powers granted to the Servicer under the Agreement or to allow the Servicer to take any action with respect to Mortgages, Deeds of Trust or Mortgage Notes not authorized by the Agreement.

The Servicer hereby agrees to indemnify and hold the Trustee and its directors, officers, employees and agents harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever incurred by reason or result of or in connection with the exercise by the Servicer of the powers granted to it hereunder. The foregoing indemnity shall survive the termination of this Limited Power of Attorney and the Agreement or the earlier resignation or removal of the Trustee under the Agreement.

This Limited Power of Attorney is entered into and shall be governed by the laws of the State of New York, without regard to conflicts of law principles of such state.

Third parties without actual notice may rely upon the exercise of the power granted under this Limited Power of Attorney, and may be satisfied that this Limited Power of Attorney shall continue in full force and effect and has not been revoked unless an instrument of revocation has been made in writing by the undersigned.

IN WITNESS WHEREOF, Deutsche Bank National Trust Company, as Trustee has caused its corporate seal to be hereto affixed and these presents to be signed and acknowledged in its name and behalf by a duly elected and authorized signatory this _____ day of March 2008.

Deutsche Bank National Trust Company, formerly known as Bankers Trust Company of California, N.A.,as Trustee

By: _____
Name: Mel Nghis
Title: Authorized Signer

Acknowledged and Agreed
Ocwen Loan Servicing LLC

By: _____
Name:
Title:

02867.001 #92035

California All-Purpose Acknowledgment

CFN # 107796401, OR BK 45233 PG 919, Page 4 of 5

P 245

BOOK 983 PAGE 322

State of CALIFORNIA   )

County of ORANGE   )

On Mar ch 12, 2008, before me, David Johnson, Notary Public personally appeared Mel Nahla, Authorized Signer of Deutsche Bank National Trust Company, formerly known as Bankers Trust Company of California, N.A., who proved to me on the basis of satisfactory evidence to the person whose names is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PERNALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Notary:

DAVID JOHNSON
Commission # 1659603
Notary Public - California
Orange County
My Comm. Expires Aug 23, 2010

Exhibit "A"
Updated as of March 10, 2008

246

BOOK 983 PAGE 323

Morgan Stanley Dean Witter Capital I Inc. Trust 2001-NC1  Closed on May 1, 2001

Morgan Stanley Dean Witter Capital I Inc. Trust 2001-NC2  Closed on August 1, 2001

CDC Mortgage Capital Trust 2001-HE1, Mortgage Pass-Through Certificates, Series 2001-HE1  Closed on November 1, 2001

Aames Mortgage Trust 2002-1 Mortgage Pass-Through Certificates, Series 2002-1  Closed on March 1, 2002

CDC Mortgage Capital Trust 2002-HE1, Mortgage Pass-Through Certificates, Series 2002-HE1  Closed April 1, 2002

GSAMP Trust 2002-NC1 Mortgage Pass-Through Certificates, Series 2002-NC1  Closed on July 1, 2002

CDC Mortgage Capital Trust 2002-HE2 Mortgage Pass-Through Certificates, Series 2002-HE2  Closed on July 1, 2002

Morgan Stanley ABS Capital I Inc. Trust 2002-NC6, Mortgage Pass-Through Certificates, Series 2002-NC6  Closed on November 1, 2002

GSAMP Trust 2002-HE1, Mortgage Pass-Through Certificates, Series 2002-HE1  Closed on November 1, 2002

Morgan Stanley Dean Witter Capital I Inc. Trust 2003-NC1, Mortgage Pass-Through Certificates, Series 2003-NC1  Closed on January 1, 2003

New Century Home Equity Loan Trust, Series 2003-2, Asset Backed Pass-Through Certificates, Series 2003-2  Closed on March 1, 2003

GSAMP Trust 2003-FM1), Mortgage Pass-Through Certificates, Series 2003-FM1  Closed on March 1, 2003

CDC Mortgage Capital Trust 2003-HE2, Mortgage Pass-Through Certificates, Series 2003-HE2  Closed on May 1, 20003

GSAMP Trust 2003-HE1, Mortgage Pass-Through Certificates, Series 2003-HE1  Closed on May 1, 2003

CDC Mortgage Capital Trust 2003-HE3, Mortgage Pass-Through Certificates, Series 2003-NE3  Closed on August 1, 2003

Equifirst Mortgage Loan Trust 2003-2, Asset-Backed Certificates, Series 2003-2  Closed on September 15, 2003

CDC Mortgage Capital Trust 2003-HE4, Mortgage Pass-Through Certificates, Series 2003-HE4  Closed on November 1, 2003

Structured Asset Securities Corporation, Structured Asset Investment Loan Trust, Mortgage Pass-Through Certificates, Series 2004-1  Closed on January 1, 2004

GSAMP Trust 2004-HE1, Mortgage Pass-Through Certificates, Series 2004-HE1  Closed on April 1, 2004

GSAMP Trust 2004-HE2, Mortgage Pass-Through Certificates, Series 2004-HE2  Closed on July 1, 2004

EquiFirst Mortgage Loan Trust 2004-3, Asset-Backed Certificates, Series 2004-3  Closed on November 15, 2004

GSAMP Trust 2005-HE1, Mortgage Pass-Through Certificates, Series 2005-HE1  Closed on January 1, 2005

GSAMP Trust 2005-SD1, Mortgage Pass-Through Certificates, Series 2005-SD1  Closed on January 1, 2005

GSAMP Trust 2005-SEA1, Mortgage Pass-Through Certificates, Series 2005-SEA1  Closed on March 1, 2005

GSAMP Trust 2005-SD2, Mortgage Pass-Through Certificates, Series 2005-SD2  Closed on May 1, 2005

GSAMP Trust 2005-SEA2, Mortgage Pass-Through Certificates, Series 2005-SEA2  Closed on September 1, 2005

New Century Home Equity Loan Trust, Series 2005-B, Asset Backed Pass-Through Certificates  Closed on September 1, 2005

Meritage Mortgage Loan Trust 2005-3, Asset-Backed Certificates, Series 2005-3  Closed on November 1, 2005

GSAMP Trust 2006-SD1, Mortgage Pass-Through Certificates, Series 2006-SD1  Closed on December 1, 2005

GSAMP Trust 2006-S4, Mortgage Pass-Through Certificates, Series 2006-S4  Closed on June 1, 2006

L 247

BOOK **983** PAGE **324**

**Exhibit "A" (Continued)**
Updated as of March 4, 2008

GSAMP Trust 2006-S2, Mortgage Pass-Through Certificates, Series 2006-S2  Closed on March 1, 2006

ResMAE Asset-Backed Pass-Through Certificates, Series 2006-1  Closed on March 1, 2006

Bravo Mortgage Asset Trust 2006-1, Bravo Mortgage Asset Backed Pass-Through Certificates, Series 2006-1  Closed on April 1, 2006

GSAMP Trust 2006-S3, Mortgage Pass-Through Certificates, Series 2006-S3  Closed on April 1, 2006

GSAMP Trust 2006-SEA1, Mortgage Pass-Through Certificates, Series 2006-SEA1  Closed on May 1, 2006

GSAMP Trust 2006-SD2, Mortgage Pass-Through Certificates, Series 2006-SD2  Closed on May 1, 2006

GSAMP Trust 2006-SD3, Mortgage Pass-Through Certificates, Series 2006-SD3  Closed on June 1, 2006

GSAMP Trust 2006-NC2, Mortgage Pass-Through Certificates, Series 2006-NC2  Closed on June 1, 2006

GSAMP Trust 2006-S5, Mortgage Pass-Through Certificates, Series 2006-S5  Closed on August 1, 2006

GSRPM Trust 2006-2, Mortgage Pass-Through Certificates, Series 2006-2  Closed on September 1, 2006

Aegis Asset Backed Securities Trust 2006-1, Mortgage Backed Notes  Closed on October 1, 2006

GSAMP Trust 2006-S6, Mortgage Pass-Through Certificates, Series 2006-S6  Closed on October 1, 2006

Soundview Home Loan Trust 2006-NLC1, Asset-Backed Certificates, Series 2006-NLC1 Closed on November 1, 2006

Soundview Home Loan Trust 2006 EQ2 Asset-Backed Certificates, Series 2006-EQ2  Closed on December 1, 2006

GSAA Home Equity Trust 2006-S1, Mortgage Pass-Through Certificates, Series 2006-S1  Closed on December 1, 2006

Soundview Home Loan Trust 2007-1 Asset-Backed Certificates, Series 2007-1 Closed on February 1, 2007

GSAA Home Equity Trust 2007-S1 Mortgage Pass-Through Certificates, Series 2007-S1  Closed on February 1, 2007

GSRPM Mortgage Loan Trust 2007-1 Mortgage Pass-Through Certificates, Series 2007-1 Closed on March 1, 2007

GSAMP Trust 2007-SEA1, Mortgage Pass-Through Certificates, Series 2007-SEA1  Closed on December 1, 2006

Ocwen Real Estate Asset Liquidating Trust 2007-1, Asset-Backed Notes, Series 2007-1  Closed on July 1, 2007

Soundview Home Loan Trust 2008-1, Asset-Backed Certificates, Series 2008-1 Closed on January 1, 2008

I hereby certify this document to be a true,
correct and complete copy of the record
filed in my office. Dated this ___ day
of _November 2008_ Bertha Heary,
County Administrator.

By _____
Deputy Clerk

Exhibit D

Recordation Requested by:
Ocwen Loan Servicing, LLC
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

563439520242
Attorney Code: 20802

Richard B Maner, P. C.
5775 Glenridge Drive
Building D, Suite 100
Atlanta, GA 30328
FC09-147

## ASSIGNMENT OF DEED TO SECURE DEBT
## GEORGIA

This **ASSIGNMENT OF DEED TO SECURE DEBT** is made and entered into as of the 1ST day of MAY, 2005, from **HOMEAMERICAN CREDIT, INC. D/B/A UPLAND MORTGAGE**, whose address is c/o Ocwen Loan Servicing, LLC., 1661 Worthington Road, Suite 100, West Palm Beach, Florida, 33409 ("Assignor") to **DEUTSCHE BANK NATIONAL TRUST COMPANY, AS INDENTURE TRUSTEE FOR THE REGISTERED HOLDERS OF OCWEN REAL ESTATE ASSET LIQUIDATING TRUST 2007-1, ASSET-BACKED NOTES, SERIES 2007-1** whose address is c/o Ocwen Loan Servicing, LLC., 1661 Worthington Road, Suite 100, West Palm Beach, Florida, 33409 ("Assignee").

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Assignor does by these presents hereby grant, bargain, sell, assign, transfer and set over unto the Assignee, its successors, transferees and assigns forever, all of the rights, title and interest of said Assignor in and to the following instruments describing land therein, duly recorded in the Office of the County Recorder of **HARALSON** County, State of **GEORGIA**, as follows:

Grantor: CHERYL DAVIS
Grantee: HOMEAMERICAN CREDIT INC. DBA UPLAND MORTGAGE
Document Date: SEPTEMBER 28, 1998
Amount: $ 59,500.00
Date Recorded: OCTOBER 27 1998
Book/Volume/Docket/Liber: 406
Page/Folio: 230
Property Address: 271 WESTBROOK ROAD, CITY OF BREMEN, GA

Together with any and all notes and obligations therein described or referred to, the debt respectively secured thereby and all sums of money due and to become due thereon, with interest thereon, and attorney's fees and all other charges. This Assignment is made without recourse.

DATED: FEBRUARY 25, 2009

HOMEAMERICAN CREDIT, INC. D/B/A UPLAND
MORTGAGE
BY IT'S ATTORNEY-IN-FACT
OCWEN LOAN SERVICING, LLC. *Recorded in Deed Book 869, Page 554, Haralson County, GA Records*

BY:
NAME: Scott Anderson
TITLE: Senior Vice President
of Residential Loan Servicing

STATE OF FLORIDA      )
                                        )SS.
COUNTY OF PALM BEACH )

**ATTESTED BY:**

NAME: Denise A. Marvel
TITLE: Manager of Document Control
and Contract Management

Witness:

(1) _____
        Oscar Taveras

(2) _____
        Doris Chapman

The foregoing instrument was acknowledged before me on this 25TH day of FEBRUARY, 2009, by Scott Anderson, the Senior Vice President of Residential Loan Servicing, OCWEN LOAN SERVICING, LLC. A Limited Liability Company, By it's Attorney-in-Fact for HOMEAMERICAN CREDIT, INC. D/B/A UPLAND MORTGAGE, on behalf of the company. He is personally known to me.

_____
Notary Public

Prepared By: Maria Alvarez
Ocwen Loan Servicing, LLC
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Phone Number: 561-682-8835

NOTARY PUBLIC-STATE OF FLORIDA
Leticia N. Arias
Commission # DD737904
Expires: NOV. 29, 2011
BONDED THRU ATLANTIC BONDING CO., INC.

DOC#01063 OFFICE
02/05/2009 20:40 AM
BK: 978 PG: 3221-3222
BECKY SMITH ROBINSON
CLERK OF SUPERIOR COU
HARALSON COUNTY

Exhibit E

*Ocwen Loan Servicing, LLC*
*12650 Ingenuity Drive*
*Orlando, Florida 32826*

OCWEN

WWW.OCWEN.COM

December 17, 2008

VIA First Class Mail
VIA Certified Mail (return receipt requested)
Certified Number: 71069017515124304330
Reference Code: 0810

Cheryl Davis

271 Westbrook Road
Bremen, GA 30110-0000

Loan Number:      34395202
Property Address  271 Westbrook Road , Bremen, GA 30110-0000

**NOTICE OF DEFAULT**

**AVISO IMPORTANTE PARA PERSONAS DE HABLA HISPANA:**
Esta notificación es de suma importancia.  Puede afectar su derecho a continuar viviendo en su casa.  Si no entiende su contenido, obtenga una traducción inmediatamente o contáctenos ya que tenemos representantes que hablan español y están disponibles para asistir.

Dear Borrower (s):

### SPECIAL NOTICE IN THE EVENT YOU HAVE FILED BANKRUPTCY

If you have received a Chapter 7 discharge under the Bankruptcy Code of the United States or if your mortgage is the type which has been discharged pursuant to a completed Chapter 13 plan, this notice is not intended and does not constitute an attempt to collect a debt against you personally. If the foregoing applies to you, this notice is sent to you only as a preliminary step to a foreclosure on the mortgage against the above-referenced property.  Provisions may be contained within your mortgage/deed of trust that require notice prior to foreclosure. As such, this is not an attempt to assert that you have any personal liability for this debt.

In addition, if you have recently filed a petition under the Bankruptcy Code, this notice has been sent to you because OCWEN has not been notified of your bankruptcy case. If the foregoing applies to you, it is **IMPORTANT** that you or your bankruptcy attorney contact us immediately and provide us with the following information: date and jurisdiction of your filing, your case number and the bankruptcy chapter number under which you have filed.

If you have not recently filed bankruptcy or received a bankruptcy discharge, you are hereby notified that this letter is an attempt to collect a debt.  All information obtained will be used for that purpose.  The debt is owed to OCWEN as the owner or servicer of your home loan and mortgage.
OREALT 2007-1

Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after receipt of this letter, the debt will be assumed to be valid by OCWEN.  If you notify OCWEN in writing within thirty (30) days that the debt or a portion thereof is disputed, OCWEN will send you verification of the debt.  If you would like to obtain such verification, direct your request in writing to the Loan Resolution Consultant within thirty (30) days.  The failure to dispute the validity of the debt may not be construed by any court as an admission of liability by you.

Your mortgage payments are past due, which puts you in default of your loan agreement. As of  **December 17, 2008,** you owe the following:

| | |
|---|---|
| Principal and Interest............................... | $ 1,482.16 |
| Interest Arrearage.................................... | $ 0.00 |
| Escrow............................................... | $ 0.00 |
| Late Charges......................................... | $ 37.05 |
| Insufficient Funds Charges........................... | $ 0.00 |
| Fees / Expenses...................................... | $ 5.32 |
| Suspense Balance (CREDIT)............................ | $ 0.00 |
| Interest Reserve Balance (CREDIT)................... | $ 0.00 |
| **TOTAL DUE**......................................... | **$ 1,524.53** |

DEMAND05.13

**This communication is from a debt collector attempting to collect a debt;**
**any information obtained will be used for that purpose.**

Ocwen Loan Servicing, LLC
12650 Ingenuity Drive
Orlando, Florida 32826

OCWEN

WWW.OCWEN.COM

On or before **January 17, 2009**, you must submit payment by Money Gram, Bank Check, Money Order or Certified Funds for the entire total due amount stated above to the appropriate address listed at the bottom of page two of this notice. Any payment(s) that become due in the interim must also be included.

Failure to bring your account current may result in our election to exercise our right to foreclose on your property. Upon acceleration, your total obligation will be immediately due and payable without further demand. In foreclosure proceedings, we are entitled to collect your total arrearage in addition to any expenses of foreclosure, including but not limited to reasonable attorney's fees and costs. If your loan has already been accelerated and foreclosure proceedings already begun, we will continue the foreclosure action (if possible). You have the right to assert in court the non-existence of a default or any other defense to acceleration and foreclosure.

OCWEN will work with bankruptcy lawyers, foreclosure defense lawyers, housing counselors, and other authorized representatives of our customers. However, we will only release information once your written authorization has been obtained, as required by law.

After acceleration of the debt, but prior to foreclosure, you may have the right to reinstate the mortgage loan, depending on the terms of the note and mortgage. We encourage you to review the provisions of the note and mortgage. Please be aware that, after acceleration of the debt, there may be expenses and attorney's fees and costs incurred by OCWEN to enforce the mortgage in addition to the overdue amount on the mortgage. Any payment to reinstate the mortgage loan after acceleration must therefore include an amount sufficient to cover such expenses and fees incurred. Payments received that are less than the amount required to reinstate the mortgage loan will be returned, and will not stop any foreclosure proceedings that have begun. **PRIOR TO SUBMITTING PAYMENT, YOU MAY WISH TO CALL ME TO VERIFY THE EXACT AMOUNT DUE.**

A HUD counseling agency may be able to provide you with assistance. To locate the HUD approved counseling agency in your area, call the HUD Housing Counseling Service at (800) 569-4287 or consult HUD's website at www.HUD.gov.

If you are unable to bring your account current, I urge you to call us immediately to discuss possible alternatives to foreclosure.

If you have the desire to remedy this situation, we want to assist you in trying to reach that goal. OCWEN would like to present you with some of the alternatives that might be available regarding your delinquent mortgage loan. While our primary objective is the collection of past due amounts on your loan, we want to work with you to find the best available alternative for you to bring your mortgage loan obligation current.

Please visit our website @www.Ocwen.com where you can review your account and enter your financial information at your convenience.

Yours truly,

ADDRESS WRITTEN CORRESPONDENCE TO:
Performing Collections Dept.
Ocwen Loan Servicing, LLC
P.O. Box 785055
Orlando, FL 32878-5055

Collections Department
Toll Free Phone: 800-310-9229          Fax: 407-737-6300

PAYMENT REMITTANCE INFORMATION (always include Loan # 34395202 with your payment)

| Money Gram | Overnight Address | VIA Regular Mail |
|---|---|---|
| Receive Code: 2355 | Ocwen Loan Servicing, LLC | Ocwen Loan Servicing, LLC |
| City: Orlando | 12650 Ingenuity Drive | P.O. Box 6440 |
| St: FL | Orlando, FL 32826 | Carol Stream, IL 60197-6440 |
| Loan # 34395202 | Attention: Collections Department | |

DEMAND05.13

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose.

Exhibit F

DOC# 001842
05/28/2009  08:30 AM
BK:983  PG:315-317
BECKY SMITH ROBINSON
CLERK OF SUPERIOR COURT
HARALSON COUNTY          REAL E
STATE TRANSFER TAX
PAID: $0.00

Code # 20802

PT 61  *O11-2009-000612*
HARALSON COUNTY, GEORGIA
REAL ESTATE TRANSFER TAX
PAID  0
DATE  05-28-2009

*Becky Robinson*
CLERK OF SUPERIOR COURT

Return to: Richard B. Maner
Richard B. Maner, P.C.
5775 Glenridge Drive,
Building D, Suite 100
Atlanta, Georgia 30328
Loan # 34395202
Our File #FC09-147

NOTE TO CLERK:  Please cross index to
Deed Book 406, Page 230,
Haralson County, Georgia records.

## DEED UNDER POWER

State of Florida

County of Palm Beach

THIS INDENTURE, made this **7th day** of April, 2009, by **Cheryl Davis**, acting through their duly appointed agent and attorney in fact, **Deutsche Bank National Trust Company, as Indenture Trustee for the registered holders of Ocwen Real Estate Asset Liquidating Trust 2007-1, Asset-Backed Notes, Series 2007-1**, as Party of the First Part, and **Deutsche Bank National Trust Company, as Indenture Trustee for the registered holders of Ocwen Real Estate Asset Liquidating Trust 2007-1, Asset-Backed Notes, Series 2007-1** as Party of the Second Part;

### W I T N E S S E T H:

WHEREAS, said Cheryl Davis, on September 28, 1998 executed and delivered to Home American Cedit, Inc., d/b/a Upland Mortgage a certain Deed to Secure Debt dated September 28, 1998, and recorded in Deed Book 406, Page 230, Haralson County, Georgia Records;  as last transferred to Deutsche Bank National Trust Company, as Indenture Trustee for the registered holders of Ocwen Real Estate Asset Liquidating Trust 2007-1, Asset-Backed Notes, Series 2007-1 by Assignment recorded in Deed Book 978, Page 322, Haralson County, Georgia records, conveying the after-described property, to secure the payment of a Promissory Note of even date therewith, in the original principal amount of $59,500.00, and

WHEREAS, default in the payment of the monthly installments under said note occurred, and whereas by reason of said default, Deutsche Bank National Trust Company, as Indenture Trustee for the registered holders of Ocwen Real Estate Asset Liquidating Trust 2007-1, Asset-Backed Notes, Series 2007-1 elected, pursuant to the terms of said deed and note, and declared the entire principal and interest immediately due and payable; and

WHEREAS, said entire indebtedness still being in default, the said Deutsche Bank National Trust Company, as Indenture Trustee for the registered holders of Ocwen Real Estate Asset Liquidating Trust 2007-1, Asset-Backed Notes, Series 2007-1 on behalf of the said Cheryl Davis and according to the terms of said Deed to Secure Debt, did advertise said property for sale once a week for four weeks in a newspaper in Haralson County, Georgia, wherein the Sheriff carries his advertisement, namely The Haralson Gateway-Beacon, said dates of publication being:  March 12, 2009, March 19, 2009, March 26, 2009 and April 2, 2009; and

Page 1 of 3

WHEREAS, the said Deutsche Bank National Trust Company, as Indenture Trustee for the registered holders of Ocwen Real Estate Asset Liquidating Trust 2007-1, Asset-Backed Notes, Series 2007-1 did expose said land for sale to the highest bidder for cash on the first Tuesday in April, 2009, within the legal hours of sale at the usual place for conducting Sheriff's sales in Haralson County, before the courthouse door at Buchanan, Georgia, in said county, and offered said property for sale at public outcry to the highest bidder for cash when and where Deutsche Bank National Trust Company, as Indenture Trustee for the registered holders of Ocwen Real Estate Asset Liquidating Trust 2007-1, Asset-Backed Notes, Series 2007-1 bid Forty Six Thousand Five Hundred Dollars And No Cents ($46,500.00); and

WHEREAS, the said land was knocked off to the said Deutsche Bank National Trust Company, as Indenture Trustee for the registered holders of Ocwen Real Estate Asset Liquidating Trust 2007-1, Asset-Backed Notes, Series 2007-1 for the sum of Forty Six Thousand Five Hundred Dollars And No Cents ($46,500.00); and

NOW, THEREFORE, in consideration of the premises and said sum of money and by virtue of and in the exercise of the power of sale contained in the aforesaid Deed to Secure Debt, the party of the first part has bargained, sold, granted and conveyed, and by these presents does hereby bargain, sell, grant and convey to the party of the second part, its successors, representatives, heirs, and assigns:

BOOK 983 PAGE 316

WHEREAS, the said Deutsche Bank National Trust Company, as Indenture Trustee for the registered holders of Ocwen Real Estate Asset Liquidating Trust 2007-1, Asset-Backed Notes, Series 2007-1 did expose said land for sale to the highest bidder for cash on the first Tuesday in April, 2009, within the legal hours of sale at the usual place for conducting Sheriff's sales in Haralson County, before the courthouse door at Buchanan, Georgia, in said county, and offered said property for sale at public outcry to the highest bidder for cash when and where Deutsche Bank National Trust Company, as Indenture Trustee for the registered holders of Ocwen Real Estate Asset Liquidating Trust 2007-1, Asset-Backed Notes, Series 2007-1 bid Forty Six Thousand Five Hundred Dollars And No Cents ($46,500.00); and

WHEREAS, the said land was knocked off to the said Deutsche Bank National Trust Company, as Indenture Trustee for the registered holders of Ocwen Real Estate Asset Liquidating Trust 2007-1, Asset-Backed Notes, Series 2007-1 for the sum of Forty Six Thousand Five Hundred Dollars And No Cents ($46,500.00); and

NOW, THEREFORE, in consideration of the premises and said sum of money and by virtue of and in the exercise of the power of sale contained in the aforesaid Deed to Secure Debt, the party of the first part has bargained, sold, granted and conveyed, and by these presents does hereby bargain, sell, grant and convey to the party of the second part, its successors, representatives, heirs, and assigns:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 192 of the 7th District of Haralson County, Georgia and fronting on the West side of McClain Road and being a tract of 0.68 acres as the same is shown and designated on that certain plat entitled Survey for Property of Keith & Tracie Coffman, prepared by Crawford-Williams Assoc., Inc., Surveying Company, certified by Douglas C. Crawford #1833, Georgia Registered Land Surveyor, dated October 4, 1988, revised November 16, 1988, as shown in Plat Book 15, Page 96, Haralson County Records, which plat is incorporated herein by this reference and made a part of this description.

Together with all and singular the rights, members and appurtenances thereto appertaining; also, all the estate, right, title, interest, claim or demand of the said Cheryl Davis, her representatives, heirs and assigns, legal, equitable or otherwise whatsoever, in and to the same.

BOOK 983 PAGE 317

TO HAVE AND TO HOLD the said premises and every part thereof unto the said Party of the Second Part, its representatives, heirs and assigns, to its own proper use, benefit and behoof in FEE SIMPLE, in as full and ample a manner as the said Cheryl Davis, her representatives, heirs or assigns, did hold and enjoy the same.

The notice of foreclosure sale as required by Georgia law in the form of a copy of the Notice of Sale submitted to the The Haralson Gateway-Beacon was provided to the debtor(s) at least 30 days prior to the foreclosure sale date.

IN WITNESS WHEREOF, the said Deutsche Bank National Trust Company, as Indenture Trustee for the registered holders of Ocwen Real Estate Asset Liquidating Trust 2007-1, Asset-Backed Notes, Series 2007-1 as Agent and Attorney in Fact for Cheryl Davis has hereunder affixed its hand and seal, the day and year first above written.

Cheryl Davis
Acting through their duly appointed attorney-in-fact,
Deutsche Bank National Trust Company, as Indenture Trustee
for the registered holders of Ocwen Real Estate Asset
Liquidating Trust 2007-1, Asset-Backed Notes, Series 2007-1,
**by and through their duly appointed attorney-in-fact Ocwen
Loan Servicing, LLC fka Ocwen Federal Bank, FSB

BY: _____
Name:  Kevin M. Jackson
Title:  Manager

BY: _____
Name:  Noemi Morales
Title:  Witness

(CORPORATE SEAL)

Signed, sealed and delivered this ___ day of April, 2009 in the presence of:

_____
Witness

Notary Public State of Florida
Johnny Miller
My Commission DD831539
Expires 10/16/2012

_____
Notary Public

**By Power of Attorney recorded simultaneously herewith.

Our File # FC09-147
Loan # 34395202

Page 3 of 3